CORRIGAN, J.
oconcurring). I concur with the majority’s conclusion that defendant was not denied the effective assistance of counsel because she failed to show that she was prejudiced by counsel’s performance. I write separately because, in my opinion, defendant also failed to satisfy the other requirement of an ineffective-assistance claim: to show that counsel’s performance was constitutionally deficient. Strickland v Washington, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Defense counsel Joseph Filip reasonably *136 decided to advance the theory that the victim, Paul Michael Burley, died from injecting himself with insulin. Filip’s decision to pursue a suicide defense was not deficient because it logically flowed from defendant’s statements to the detectives and to counsel. In light of this defense, defense counsel did not need to challenge the testimony of the prosecution’s experts that Burley died of hypoglycemic shock caused by insulin.
“ ‘[T]he reasonableness of counsel’s actions may be determined or substantially influenced by the defendant’s own statements or actions.’ ” Johnston v Singletary, 162 F3d 630, 642 (CA 11, 1998) (citation omitted). A defense counsel’s decision regarding trial strategy is not demonstrably deficient if the defendant directed that strategy. Keith v Mitchell, 455 F3d 662, 672 (CA 6, 2006). “[The Sixth Amendment] speaks of the ‘assistance’ of counsel, and an assistant, however expert, is still an assistant.” Faretta v California, 422 US 806, 820; 95 S Ct 2525; 45 L Ed 2d 562 (1975). In United States v Wellington, 417 F3d 284, 289 (CA 2, 2005), the Court of Appeals for the Second Circuit explained that the lawyer’s role is to advocate for his client and follow his client’s wishes if possible:
It is the “role of the lawyer [to be] a professional advisor and advocate,” Lefcourt v. United States, 125 F.3d 79, 86 (2d Cir.1997) (quoting In re Shargel, 742 F.2d 61, 62-63 (2d Cir.1984)), not to usurp his “ ‘client’s decisions concerning the objectives of representation,’ ” see Jones v. Barnes, 463 U.S. 745, 753 n. 6, 103 S.Ct. 3308, 77 L Ed.2d 987 (1983) (recognizing that, where ethically and legally possible, “ ‘ lawyer shall abide by a client’s decisions concerning the objectives of representation’ ”) (quoting ABA Model Rules of Prof 1 Conduct R. 1.2(a)); Wallace [v Davis, 362 F3d 914, 920 (CA 7, 2004)] (“By respecting [his client’s] wishes, counsel not only abided by ethical requirements (lawyers are agents, after all) but also furnished the quality of assistance that the *137 Constitution demands.”) (emphasis in original); cf. Faretta v. California, 422 U.S. 806, 820, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (“The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed hy the Amendment, shall be an aid to a willing defendant — not an organ of the State interposed between an unwilling defendant and his right to defend himself personally.”).
In Wellington, the Second Circuit rejected the defendant’s argument that his trial counsel was ineffective because, as a result of counsel’s following the defendant’s instructions, counsel pursued a strategy that, in the absence of the defendant’s instructions, might have constituted professional error. The Court explained:
[T]o the extent that defendant instructed his counsel to pursue a course of action that defendant now complains of, there was no abridgement — constructive or otherwise — of defendant’s Sixth Amendment right to effective assistance of counsel. See Roe v. Flores-Ortega, 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (“[A] defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently.”) (citations omitted) (emphasis in the original); see also Coleman v. Mitchell, 268 F.3d 417, 448 n. 16 (6th Cir. 2001) (“[C]ounsel was not ineffective for following the defendant’s clear and informed instruction.”)[1]; Frye v. Lee, 235 F.3d 897, 906-07 (4th Cir. 2000) (observing that if the Court were to hold that defense counsel “rendered *138 ineffective assistance [by acceding to the defendant’s instructions not to present] . . . mitigation evidence, [the Court] would be forcing defense lawyers in future cases to choose between Scylla and Charybdis”); Autry v. McKaskle, 727 F.2d 358, 360-61 (5th Cir. 1984) (rejecting claim of ineffective assistance of counsel for failure to investigate and present evidence at sentencing phase where defendant had instructed his attorney not to fight the death penalty).... [Wellington, supra at 289.]
By arguing that Burley had injected himself with insulin, Filip reasonably pursued a theory of defense that was consistent with defendant’s wishes and her previous statements to the police regarding Burley’s death. Specifically, defendant told the police detectives that Burley had injected himself with insulin. She also stated at a later interview: “That poor dear, he killed himself for me.” Defendant, the person who knew Burley’s physical capabilities the best, told a detective that despite Burley’s severely impaired vision and problems with holding things, he could inject himself with insulin. Before trial, defendant told Filip that Burley had killed himself by an insulin injection and that she wanted him to pursue this defense theory at trial. Defendant also testified that Burley had mental problems and that he had “talked suicide for 10, 15 years.” She testified that she had informed two of Burley’s doctors of his suicidal intentions. In light of defendant’s statements and wishes, it was reasonable for Filip to argue at trial that Burley had died by a self-administered insulin injection, rather than by a morphine overdose. This is especially so when Filip knew that the prosecution had two well-qualified expert witnesses, Dr. Bernardino Pacris and Dr. Michael Evans, whose anticipated testimony supported the theory that Burley died from an insulin overdose. As Filip testified *139 at the Ginther[2] hearing, his primary theory of defense, that Burley took his own life by taking insulin, did not require him to dispute the opinions of the prosecution’s experts. Thus, Filip’s decision not to present an expert was reasonable in light of his theory of defense.
Second, even though defendant wanted Filip to pursue a defense theory that avoided challenging the conclusions of the prosecution’s experts, Filip nonetheless had consulted two doctors regarding the cause of Burley’s death. He first talked to a local general practitioner, who referred him to an endocrinologist,[3] Dr. Halsey.[4] Dr. Halsey’s views did not refute Dr. Pacris’s opinion that Burley died from an insulin overdose. Because consultation with two doctors revealed nothing that would cause Filip to question the conclusions of the prosecution’s experts, he reasonably ended the investigation at that point. He had no reason to believe that further investigation would lead to the discovery of an expert who might question Burley’s cause of death.
[Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.... In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel’s judgments. [Strickland, supra at 690-691.]
Defendant, in appellate hindsight, essentially faults Filip for failing to find the “right” expert. A defense *140 attorney is not required to repeatedly consult experts until he finds one who will support a certain theory. “Although attorneys can always do more in preparation for a trial,” the failure to do so does not mean that they are ineffective. Mason v Mitchell, 320 F3d 604, 618 (CA 6, 2003).
“Judicial scrutiny of counsel’s performance must be highly deferential” and should refrain from second-guessing counsel’s chosen trial strategy. Strickland, supra at 689 (emphasis added). “[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel’s challenged conduct on the facts of the particular case, viewed as of the time of counsel’s conduct.” Id. at 690 (emphasis added). “A reviewing court must not evaluate counsel’s decisions with the benefit of hindsight.” People v Grant, 470 Mich 477, 485; 684 NW2d 686 (2004), citing Strickland, supra at 689. Defense counsel’s strategic choices were constrained by defendant’s actions. Defendant has failed to show that, given what Filip knew at the time, Filip’s decision not to challenge the testimony of the prosecution’s experts that Burley had died from an insulin overdose was not a matter of sound trial strategy. See People v Mitchell, 454 Mich 145, 156; 560 NW2d 600 (1997), quoting Strickland, supra at 689 (stating that a defendant must “ ‘overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy” ’ ”). Because Filip’s representation was adequate at the time and under the circumstances known to him, it was sufficient to pass constitutional muster.
In sum, I conclude in the majority opinion that defense counsel was not ineffective because his performance did not prejudice defendant, and four other justices support that conclusion. I separately conclude that counsel was not ineffective because his perfor *141 manee was not constitutionally deficient for failing to produce an expert to refute the prosecution’s experts. Filip had no reason to challenge the testimony of the prosecution’s experts, given defendant’s theory of defense and her own prior statements to the police regarding the cause of death. Moreover, Filip sufficiently investigated other theories.
Accordingly, I conclude that defendant has not established a Sixth Amendment ineffective-assistance claim.

 In Coleman v Mitchell, 268 F3d 417, 448 (CA 6, 2001), the Court of Appeals for the Sixth Circuit held:
If the record indicated a clear, informed assertion by Petitioner that he did not wish his counsel to present any mitigation evidence in Petitioner’s behalf, case law may have supported the district court’s conclusion that counsel, merely respecting the,informed wishes of a client, need not have investigated or presented any evidence in connection with Petitioner’s background at the penalty phase of the trial. [Emphasis added.]

 People v Ginther, 390 Mich 436; 212 NW2d 922 (1973).

 Endocrinology is the study of the glands and hormones of the body and their related disorders. Thus, an endocrinologist would be familiar with insulin shock as a cause of death.

 Dr. Halsey’s first name is not mentioned in the transcript of the Ginther hearing.