17-997-cr
*United States v. Wider*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of September, two thousand nineteen.

PRESENT:  JON O. NEWMAN,
          JOSÉ A. CABRANES,
          GERARD E. LYNCH,
                    *Circuit Judges.*

---

UNITED STATES OF AMERICA,

                    *Appellee,*                          17-997-cr

          v.

JOSEPH FERRARA, ERIC FINGER, JOSEPH MIRANDO,
JOHN PETITON, MANJEET BAWA,

                    *Defendants,*

AARON WIDER,

                    *Defendant-Appellant.*

---

FOR APPELLEE:                          Amy Busa, Artie McConnell, Assistant
                                       United States Attorneys, *for* Richard P.
                                       Donoghue, United States Attorney for the
                                       Eastern District of New York, Brooklyn,
                                       NY.

FOR DEFENDANT-APPELLANT:               Aaron Wider, *pro se*, Otisville, NY.

1

Appeal from a judgment of the United States District Court for the Eastern District of New York (Arthur D. Spatt, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

Defendant-Appellant Aaron Wider ("Wider"), incarcerated and proceeding *pro se*, appeals from a judgment of the District Court convicting him, after a jury trial, of conspiracy to commit bank fraud under 18 U.S.C. §§ 1344 and 1349. According to the Government, between 2003 and 2008, Wider and his co-conspirators lied on mortgage applications by falsely inflating house prices to obtain fraudulent mortgages from victim financial institutions that his company, HTFC Corporation ("HTFC"), would then sell to other financial institutions. The District Court sentenced Wider to 150 months' imprisonment. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

### I.      Ineffective Assistance of Counsel

Wider asserts that his original attorney was ineffective because she represented him and a co-defendant, Eric Finger, during a status conference at which the defendants agreed to the exclusion of time under the Speedy Trial Act. Although ordinarily we do not address ineffective assistance of counsel claims on direct appeal, *see United States v. Wellington*, 417 F.3d 284, 288 (2d Cir. 2005), where the record permits resolution of the ineffective assistance claim "beyond any doubt," we may choose to consider the claim, *United States v. Khedr*, 343 F.3d 96, 100 (2d Cir. 2003). We do so here. Even assuming, for the sake of argument only, that counsel's representation of Wider and Finger during the conference was objectively unreasonable, there was no prejudice. *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (requiring a showing that "counsel's representation fell below an objective standard of reasonableness" and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). As the Government argues, the other co-defendants agreed to the delay and the trial would not have been held earlier. *See* 18 U.S.C. § 3161(h)(6) ("A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted" shall be excluded in computing the time under the Speedy Trial Act). Accordingly, Wider's ineffective assistance claim is meritless.

### II.     Speedy Trial and Jury Selection

Wider also asserts that his agreement to the Speedy Trial exclusion was not valid because of the representation issue. But even if that were the case, Wider (by then represented by a different attorney, whose effectiveness he does not challenge) failed to move to dismiss the indictment on speedy trial grounds, thereby waiving any claim under the Speedy Trial Act. *See* 18 U.S.C. §

2

3162(a)(2) ("Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal" on speedy trial grounds); *accord United States v. Abad*, 514 F.3d 271, 273 (2d Cir. 2008).

Any constitutional speedy trial claim under the Sixth Amendment also fails. The delay was 60 days to permit the Government to finish copying and producing discovery to the defendants. Wider did not object to the delay, and there was no prejudice because the entire trial would have been delayed anyway. *See United States v. Black*, 918 F.3d 243, 254 (2d Cir. 2019) (requiring court to consider the "'[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant'" to determine if a defendant's Sixth Amendment right to a speedy trial has been violated (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

Finally, Wider's argument that he did not consent to the magistrate judge's handling of jury selection fails because the record reflects that Wider consented to proceed before a magistrate judge through his second attorney, while Wider was present in the courtroom.

### III. Prosecutorial Misconduct and Sufficiency of the Evidence

Wider asserts various instances of prosecutorial misconduct or *Brady* violations, unpreserved evidentiary issues, and sufficiency of the evidence claims. The arguments are meritless.

"A defendant's conviction may be vacated if prosecutorial misconduct caused substantial prejudice implicating the right to due process." *United States v. Fell*, 531 F.3d 197, 209 (2d Cir. 2008). To establish a *Brady* claim, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Banks v. Dretke*, 540 U.S. 668, 691 (2004). Moreover, unpreserved evidentiary issues are reviewed for plain error. *See Fell*, 531 F.3d at 209.

A defendant challenging the sufficiency of the evidence faces a heavy burden, and a conviction will be upheld if any rational trier of fact could have found the elements of a crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A reviewing court "view[s] the evidence in the light most favorable to the government, drawing all inferences in the government's favor," *United States v. Sabhnani*, 599 F.3d 215, 241 (2d Cir. 2010) (internal quotation marks omitted), and applies the sufficiency test "to the totality of the government's case and not to each element, as each fact may gain color from others," *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999). Wider was charged with conspiracy to commit bank fraud under 18 U.S.C. §§ 1344 and 1349. The elements of bank fraud are that a person "knowingly executes, or attempts to execute, a scheme or artifice—(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or

promises." 18 U.S.C. § 1344. The financial institution must be federally chartered or federally insured. *See United States v. Crisci*, 273 F.3d 235, 239 (2d Cir. 2001).

## A. Guaranty and Sovereign Bank

Wider first argues that the Government suborned perjury and withheld exculpatory evidence by failing to introduce evidence that Guaranty Bank, a victim financial institution, had not adhered to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). FIRREA does not prohibit the Government from pursuing criminal charges based on fraudulent activity; it places limits on civil claims filed against FDIC-institutions that have gone into receivership. *See* 12 U.S.C. §§ 1821(d)(5)-(9), (12). Because Wider's argument is meritless, the evidence is not exculpatory and any withholding of this information does not constitute misconduct. Wider also fails to point to evidence in the record showing that the Guaranty Bank employee testified falsely.

Wider also argues that the Government misled the grand jury with respect to the status of Sovereign Bank, another victim, because Sovereign Bank had previously sued HTFC and the *Rooker-Feldman* doctrine prohibited the Government from offering evidence that Sovereign was a financial institution. The *Rooker-Feldman* doctrine is inapplicable here; the Government is not bringing a civil suit complaining of damages caused by a state court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Any *Brady* claim fails because Wider was or should have been aware of the prior lawsuit against his business, of which he was the sole owner. *See DiSimone v. Phillips*, 461 F.3d 181, 197 (2d Cir. 2006) ("Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." (internal quotation marks omitted)).

## B. Grand Jury and Eric Finger

Wider next argues that the Government committed misconduct by securing an indictment alleging that the conspiracy began in 2003 and by offering Finger's testimony at trial to that effect. Wider asserts that this evidence was false because HTFC was not a licensed mortgage broker until 2005. But this, too, is meritless. Finger testified that he and Wider began discussing the mortgage fraud scheme in 2003 and he gave an estimate of the number of mortgages obtained over the course of the conspiracy. Further, the Government offered evidence that Wider's prior business (and HTFC's predecessor) was a whole-loan purchaser and had been in business since 1998. Because the Government offered evidence that Wider had been in the mortgage banking business in 2003, it offered sufficient evidence that Wider had participated in the conspiracy as early as 2003. Again, there is also no *Brady* violation because Wider, who owned HTFC, was or should have been aware of when HTFC was licensed. *See id.*

Wider also asserts that the Government committed a *Brady* violation by withholding evidence that HTFC foreclosed on a particular property, and having Finger testify about it. But as HTFC's owner, Wider would have known of the evidence and could have introduced it at trial.

4

### C. Nomura

Insofar as Wider argues that the Government's presentation of evidence relating to Nomura Securities, a non-FDIC-insured entity, undermines the validity of his indictment or conviction, Wider is mistaken. The indictment alleged all the elements of bank fraud. 18 U.S.C. § 1344. The inclusion of Nomura as a victim of the overall conspiracy does not cast doubt on the indictment because all the other victim banks were "financial institutions" within the meaning of 18 U.S.C. § 20(1) and a conspiracy can have more than one objective. *See Anderson v. United States*, 417 U.S. 211, 226 (1974) ("A single conspiracy may have several purposes, but if one of them—whether primary or secondary—be the violation of a federal law, the conspiracy is unlawful under federal law."). Further, the indictment did not charge Wider with conspiring to defraud Nomura. Accordingly, the introduction of evidence at trial related to Nomura was permissible because: (1) it was relevant to show that HTFC's mortgage sales to Nomura were a part of the same conspiracy and how the defendants' general plan and scheme functioned, *see* Fed. R. Evid. 401; and (2) it was not so confusing or misleading to the jury that its probative value was substantially outweighed by any arguable prejudice, *see* Fed. R. Evid. 403.

### D. Inspector David Nummey

Wider further argues that the Government offered perjured testimony from New York Department of Finance Inspector David Nummey and that the Government committed misconduct because it failed to introduce evidence about HTFC filing a lis pendens on one of the properties that co-defendant Joseph Ferrara purchased. Even if HTFC filed a lis pendens on the property, it does not undermine Nummey's testimony about Ferrara's purchasing other homes while having lis pendens filed against his properties. Nor does it show that Nummey testified falsely.

The Government's failure to introduce this information was not a *Brady* violation because Wider should have been aware that HTFC had filed a foreclosure action on that property. *See DiSimone*, 461 F.3d at 197. Nor does this information undermine Wider's conviction. The Government introduced evidence that HTFC's general pattern was to sell the fraudulently obtained mortgages to secondary market institutions at inflated prices. The fact that HTFC had filed a single lis pendens on one of the properties does not contradict the other evidence.

### E. Other Issues

Wider next argues that the fact that his co-defendant, Ferrara, was acquitted shows that the Government's evidence was insufficient to convict him (Wider). But the evidence supporting Wider's conviction is significant. For example, Finger testified that Wider had been central to the conspiracy, had proposed the idea originally, and that 50 to 60 fraudulent mortgages were processed through HTFC.

Wider also argues that the Government violated his Sixth Amendment right to confront witnesses against him by introducing a document signed by Alan Wagner stating that he (Wagner) resigned as trustee of the HSBC Trust. But that document is not "testimonial" within the meaning

of the Confrontation Clause because it was not made for the purpose of trial or criminal proceedings; rather, it was made at Wider's direction as a part of the bank fraud scheme. *See Crawford v. Washington*, 541 U.S. 36, 68–69 (2004) (holding that the admission of "testimonial" hearsay statements without providing the defendant the opportunity to cross-examine the declarant violated the Confrontation Clause); *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (explaining that a "testimonial" statement is one that is "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" (quoting *Crawford*, 541 U.S. at 52)). Because, *inter alia*, the Wagner document was not made for the purpose of trial or criminal proceedings, there is no Confrontation Clause issue with the admission of the document.

## IV.    Ex Post Facto Clause

Wider argues that his conviction and sentence violated the Ex Post Facto Clause because the Government indicted him for defrauding mortgage lenders prior to 2009 and relied on the 2007 edition of the Sentencing Guidelines. His arguments are meritless. In 2009, Congress amended 18 U.S.C. § 20 to include non-FDIC insured mortgage lenders. *See Fraud Enforcement & Recovery Act of 2009*, No. Pub. L. 111-21, § 2(a), 123 Stat. 1617. But the warehouse lenders and secondary market financial institutions identified as victims in this case (except Nomura) were all FDIC-insured. Therefore, the definition of financial institution during the relevant years of the conspiracy (2003 to 2008) applied to all but one of the victim financial institutions.

Further, the application of the 2007 version of the sentencing guidelines was permissible. Although the sentencing guidelines applied by the District Court are usually the ones in effect at sentencing, the District Court must apply the version of the guidelines in effect on the date of the offense if that would result in a less severe penalty. *See United States v. Kilkenny*, 493 F.3d 122, 126–27 (2d Cir. 2007); U.S.S.G. § 1B1.11(b)(1). Here, the Probation Department recommended that the District Court apply the 2007 guidelines because the then-current version of the guidelines would have resulted in a higher offense level. *See* U.S.S.G. Supp. to App'x C, am. 792 (later version included a two-level increase for offenses that cause "substantial financial hardship" to one or more victims).

## CONCLUSION

We have reviewed all of the remaining arguments raised by Wider on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court